thank you your honor John Dallas on behalf of the defendant Gordon Miller I'm intending to reserve two minutes for rebuttal and focus on my arguments going to his conviction rather than sentencing starting with my first amendment the evidence here was insufficient for any rational juror to conclude beyond a reasonable doubt that Gordon Miller was guilty of the charged methamphetamine offenses the case centered around the DEA agents methamphetamine purchases from a co-defendant Phyllis Mosher on six states in 2014 and 2015 most of the evidence at trial dealt with Mosher's drug deals with the agent and her interactions with co-defendant Donnie Phillips there was little evidence that Miller was involved in Mosher's drug let me mr. mr. bells let me because I think we're all familiar with the record let me let me pose what I think I see in this record and have you tell me why you don't think that's enough to on the sufficiency of the evidence we have at least several transactions between the agent and Mosher where Phillips is plainly involved no no for purposes of my discussion now mr. Phillips counsel might dispute that but Phillips is involved in the aid and the the agent says I'd like more I need more drugs or I needed another transaction and the evidence seems to show on each of those occasions mr. Phillips travels someplace meets with mr. Miller returns with the drugs on those occasions sometime one at Miller follows mr. Phillips back to the location where the transaction takes place and then when arrests are finally made of Mosher and Phillips mr. Miller says to his girlfriend go around and make sure the cops aren't here gets in his car gets in her car they speed away and they find him with they find money in the wheel well and Mosher's phone number or contact information so I think I'm not viewing that evidence if I do that evidence in the light most favorable to the government it's not great but is it enough to get over their burden no it's not your honor you know strong suspicions are not enough you have to actually have proof beyond a reasonable doubt that a rational juror could conclude I there's two two main points I think the court brought up and I want to address both of them on the first one there was one occasion of the six drug deals where Miller and and Phillips allegedly met and that was on and then an officer Loxham testified that he foul Phillips ultimately saw Phillips go to the Wild Idol saloon I ran around 6 p.m. I apologize but one thing I didn't make a good point of emphasizing in my briefs was that it is clear that the officer testified went to three different locations before he went to the Wild Idol saloon at 615 p.m. he mentions this it is in my brief mentions at Exeter for he fouled Phillips and agreed to different locations and ultimately to the Wild Idol saloon but I what I didn't put in the excerpts of record and I apologize is the heat there Phillips went during that period up until 6 p.m. and I think it's significant I said reporters transcripts 1017 the 1021 and the officer testifies that Phillips went to first was addressed at one Los Alamos court in Richmond he goes behind a large property with a gate goes inside for two hours where the officer can't see what he's doing he then leaves gets in the car and he ends up going to the good and then also a gas station and then he goes to the the Wild Idol saloon one officer testified that he saw mr. Miller with mr. Phillips so I think if I can't because if it from the time of the lunchtime deal to the time late evening the second mr. Phillips was going to try to get more drugs or making contacts involving drug deal it was more likely that he did it at this property one Los Alamos court or the other locations rather than the one with mr. Miller where nothing no it's mr. Miller give mr. Phillips anything and then when they fouled into the at that location was at a distance away and at night and the officers could not see anything exchanged between the men so because of all that I don't think that the one observation with with respect to the second point a judge Hurwitz after defendants arrest I think it is at least relevant evidence that mr. Miller saw that he believed were police officers outside told his girlfriend they went essentially fast from there but you have to remember that mr. Miller is a convicted felon there's a number of people that don't trust police in general and what it shows is that there's some concern of him not necessarily that it was the offense charged by the government and the same thing with respect to the let me just ask you a factual question on that I think I remember in the record that there's evidence that he had learned about the arrest of mr. Phillips before he he fled am I correct in that well what what I remember what I see in the yeah and I would I've tried to read the whole record in this case I thought there was some the triggering event was learning about the arrests of mr. Phillips maybe not miss Mosher am I wrong well I know that at supplemental excerpts of record 10 and 11 mr. Miller learns I mean he he's texting mr. Phillips girlfriend and he can't find he can't find mr. Phillips anyone and he's asking her where you know where he is can you have him call me and then he asked for Phillips Phyllis's phone number which shows that he has some friendship with that he knows that Phillips has some friendship with Phyllis Mosher not necessarily that there was any drug transaction okay I can go back I don't want to you know we can go back and look at the record on that did you want to save the rest of your time for a bottle or do you want to yes your honor thank you okay let's hear from counsel for mr. Phillips thank you your honor may it please the court Alexi holler appearing on behalf of mr. Phillips I would please like to reserve two minutes for rebuttal I'll try to help thank you this case is about the fundamental rights presented defense during a criminal trial for mr. Phillips there was one potential defense at trial entrapment under the unusual facts presented the proffered the third party entrapment defense was not precluded by the Ninth Circuit law and it was similar to that recognized by other circuit courts including the First Circuit and United States vs. Louisie however under the district courts pretrial ruling mr. completely barred from pursuing the defense of trial without it the result of the trial was for ordained it is not unusual for this court to be faced with appeals involving entrapment where the criminal defendant claims that the evidence was sufficient to justify an entrapment instruction to the jury but this is not the typical case here mr. Phillips was denied the right even to present any evidence related to entrapment at trial both with respect to inducement and inducement and lack of predisposition the entrapment defense was denied before trial as a matter of law that legal decision by the district court which is subject to the Nova review violated mr. Phillips's constitutional rights and violence and warrants reversal now it's important to emphasize that this case does not involve a derivative entrapment theory in other words the theory is not that mr. Phillips was entrapped because miss Mosher was entrapped and a bunch of the cases that are cited by the government and that are in this courts president related derivative entrapment and that is not what is that issue here instead the theory here is that miss Mosher was an unwitting agent of the government and that she entrapped mr. Phillips by using improper inducements including mr. Phillips's desperate need to help his fund obtains funds for his criminal defense in a then pending death penalty case now I recognize that this course decisions in Thixton and Emmert contained broad language that would at first glance appear to preclude a third-party entrapment theory but these were court decisions not statutory provisions the panels decided cases based upon the facts before them and the facts are different and this court has not had the opportunity to address the exception carved out by the First Circuit in Louisiana which was decided in 2007 long after the Ninth Circuit cases so what is the Louisiana exception Louisiana recognized that the defendant raises a valid entrapment defense when he can show one a government agent specifically targeted the defendant in order to induce them to commit illegal conduct to the agent acted through the middleman after other government attempts and do something that the defendant had failed three the government agent requested encouraged or instructed the middleman to employ a specific inducement which could be found to be improper for the agents actions led the middleman to do what the government sought even if the government did not use improper means of to influence the middleman and five as a result of the middleman's inducement the targeted defendant in fact engaged in illegal conduct I understand it that this was a pretrial ruling but on the record in this case all I see is the government agent buying drugs from Ms. Mosier and encouraging her to get her get more from her supplier there's no evidence at the outset that he knows who her supplier is is there there's evidence at ER 373 and 374 the the criminal the affidavit in support of the criminal complaint I think a fair reading of that suggests that number one or indicates that this agent was aware of Mr. Phillips going all the way back to 2001 this is this thing operation was it mr. was he aware was there any evidence he was aware that mr. Phillips was miss Mosier supplier yes I believe at 373 that that does that that is where I would look for that that basically the the CI had told them that Phyllis was a supplier I can pull that up but that's okay well I'll find it go ahead and so yeah this is what Louie's he talks about I mean Louie's he also involved somebody Louie's he himself was a member of the mafia of the mob and it was a targeted operation at Louie's II and here there was evidence to support that this was a targeted operation at mr. Phillips now I would agree that you know the record is not complete on this point and it doesn't match up with all of the factors set forth in the Louie's II case yet but that's because this defense was denied before trial mr. Phillips never got the opportunity to present this defensive trial he should have received the opportunity to cross-examine the DEA agent about hey how did this operation start who were you going after what did you tell exactly Mosier at each of your encounters in terms of Phillips and and in terms of targeting Phillips did you mention to miss Mosier the fact that mr. Phillips's son was in desperate need of defense funds for example there is evidence that this DEA agent was aware that mr. Phillips's son was facing murder charges so what do you do with what do you do with our just you think our decision in Emmert has to be overruled also I don't actually I think that Emmer is close but not it doesn't fit Louie's II and I think whatever it is a case in which the government targeted a specific defendant through an unwitting agent and we said that wasn't entrapment that's really what you're contending here isn't it but the operation in in Emmert focused on Powell it wasn't Emmert came in because of Powell it wasn't an operation that was focused on on on Emmert at the outset so so this is a different kind of case in terms of Louie's II versus Emmert and by the way I'm not saying that our cases are correctly decided but we have to assume that for purposes of our three judge panel right but I think there is a path here where you would not have to overrule Emmert because Emmert does not involve the kind of specific targeting that is that issue in Louie's II I wouldn't know it also that Louie's II addressed some of the precedent in the to Emmert and distinguished it and and and I would point here for example and fixed in this court talked about well we don't want to allow third-party entrapment defenses because it would be very hard to prove for the government because a lot of these interactions will be happening between the private individuals not with an agent and Louie's II addresses that very concern at page 56 and talks about the fact that in the Louie's II type case the government is involved at each step of the way okay so this is a driven by the government and so at page 56 of Louie's II the First Circuit says you know that it's not attenuated government involvement and and it distinguished its prior cases you know on that basis so I would urge the court I mean I think there's others you know scenarios where the government can't get around for example search warrant restrictions by using an agent right so if by using a even a civilian agent you know so this is similar to that there should be some limits to the government's ability to use agents witting or unwitting to entrap a defendant and all we're saying all mr. Phillips saying is at least give us the chance give us the chance to present the evidence and if at the end of the day if at the close of evidence that evidence is not there to justify an entrapment instruction or it's not doesn't satisfy the factors set forth in Louie's II then okay don't allow it but at least give us to the day in court given the chance to present his case and I see that I've got less than two minutes left so well we'll save that for rebuttal thank you I appreciate let's hear from the government good morning your honors Jason hit on behalf of the defense counsel for mr. Phillips ended and I'd like to respond to judge Hurwitz question as well as the argument that specific targeting is somehow improper and Phillips relies heavily on Louie see both in his brief and here today and I think there's important distinctions that are worth noting the first is in Louie see the person in Mosher's position was a individual named credit pre-vit E and he's readily distinguishable because of three factors one he was a paid government informant to he was working at the direction of the FBI to target the defendant Louie see and three the cocaine deal at issue that was charged and went to trial happened because credit was requesting that the defendants superior a man named Merlino instruct Louie see to do the deal in contrast Mosher was never an informant paid or otherwise never worked at the is direction to do anything had no authority within a hierarchical organization over Phillips nor could she order him to do the deals moreover in Louie see unlike these facts the undercover agent a man named McGowan repeatedly attempted directly to induce Louie see to engage in a cocaine deal that sort of entertaining facts because of La Cosa Nostra but what he was doing was requesting that Louie see trade diamonds for cocaine and under the facts reported in Louie see the defendant was kind of uncomfortable with doing the so there was direct inducement it from the agent into Louie see before getting a paid informant to complete the deal here the undercover agent never dealt directly with Phillips much less attempted to induce him to do anything so and I think it's also worth noting the agent while being aware generally because he's a good investigator and had reviewed you know evidence listen to informants he knew that Phillips was likely one of the suppliers there's through all the recordings with Mosher that he ever induced counsel or commanded her to go to Phillips in fact a couple of the deals Phillips I'm sorry Mosher went to a completely independent supplier a woman named Michelle Buster who's prosecuted separately and there was no reaction by the agent to say don't don't go to her anymore stop bringing me that drug so I think Louie see is just a non-starter it's readily distinguishable and it's also worth noting that under as judge Horowitz pointed out that fixed in an emirate would have to be overruled because the case law that this court has found which I think is distinguishable from Louie see on its face says unequivocally inducement must be provided by someone acting for the government and there's just simply no evidence that Mosher ever worked for the government so I think the entrapment is sort of a red herring and it really doesn't there's no reason the provided this instruction under the Crawford facts at the time of trial then I want to turn briefly can I ask you to address with respect to mr. Miller and my I expressed the same concern I did to you did I did to his counsel it's the evidence is certainly not overwhelming as to mr. Miller tell me why it's sufficient for a number of reasons your honor first there were multiple overlapping layers of corroborating evidence demonstrated that when Mosher needed to get drugs to the UC particularly on September 11 and February 4th which the jury convicted him as well as April 7th the drugs seized by law enforcement Mosher it was a very clear chain of events Mosher's phone that's a September 11th what counts were those I believe that's eight nine okay so those were counts on what you was convicted yes your honor okay during September 11th deals it's sort of like in the way we argued this to the jury was in that instance unlike Phillips the government wasn't looking for Phillips or Miller Miller came to the government by way of following the data and the reason the data wasn't available for the earlier deals involving the Phillips and Mosher is that we didn't have the records that we did for the September 11th and February 4th record deals in other words Miller hadn't been figured out yet by the investigation by September 11th break and they follow Phillips after the second deal which would be count nine and he traveled correctly out to this very remote property at the base of Mount Diablo and by following his physical presence that is Phillips right after he's received money from Mosher from a drug deal significance as well as following Phillips's phone data it takes you to Miller's property and it's consistent that we are in for the jury and the jury found with Phillips taking money out to Miller for his cut of the deal that Mosher had just in and then the court touched on the February 4th where it is very tight and there is very specific reason that the jury found him guilty on those two counts related to the February 4th deal and that is what's important is what Mosher is giving unguarded admissions and almost like a real-time update to the undercover that is being corroborated in real time by physical surveillance and phone records that is I have the first part of the delivery that you've ordered that's the first set of counts first count on February 4th but there's a problem and they have to go get the remaining part and what the agents see is Phillips going out directly to me at the Wild Alley Saloon with Miller an agent walks in at some point and sees them sitting together but more significantly Phillips and Miller travel in the same car meet with an unidentified suspected supplier Miller is the only person who meets takes possession of a bag Phillips then leaves eventually with the bag in his car and then Mosher importantly reports to the UC hey they've got the drugs in other words order has been filled and for the first time suggest that this earlier stop at the Arbalest property is somehow relevant if that was true then it should have gone that Phillips reports to Mosher I've got the drugs I'm at Arbalest I'll bring it over if the drug deal can't happen the second one on February 4th until Miller obtains the drugs gives them to Phillips and then Phillips is followed directly from the meeting with Miller to Mosher can I ask you others I may be confused here you referring to September December to September 11th events first the second I transitioned to February 4th in my right no but when you first referred to September 11th you said those were counts eight and nine I think those were counts six and seven on which mr. Miller was acquitted am I wrong I don't I don't think so but not having it in front of me your honor this is a fairly massive record but the evidence on September 11th whether it was the basis of a conviction or not it laid the path for the February 4th it's how the I understand that we can consider it even if it was acquitted because it showed contact for example over the phone by between the two of them so we know they knew each other well also in physical surveillance by Phillips going to Miller's property it's two things on September 11th it's it isn't just the phone activity and the spike in activity in the phones it's also that right but since he was acquitted since he was a assume for a on those counts we certainly can't infer from that activity that he was involved in a drug conspiracy on those days can we you can you can use it to apply the standard under Jackson in the light most favorable that the jury's verdicts on the other counts was supported by the evidence and that every rational inference should be drawn so maybe the jury got it right if you're correct and I'm wrong that he was acquitted of those it doesn't follow that he's not guilty on the remaining counts of the conspiracy because the other evidence as the court started to summarize mr. Dallas was significant and I and I would say I don't to the extent Miller argues it's a close case then the government wins under the standard of Jackson no I understand he's not really arguing it's a close case be fair he's he's arguing that it's not a close case he wins I'm saying to me at best it seems like a close case and so I'm trying to figure out which side of the line it falls on well I think in addition to the phone activity the physical surveillance and the very damaging facts on February 4th we also have to look at the unguarded admissions to Mosher she's providing details to the undercover at a time when she can't possibly know she's being recorded and when you put that evidence together to a jury there's no way that Mosher can understand that her comment about Phillips's partner being at Hayward would later at trial be corroborated by a record Miller's lawyer put into evidence showing he was in Hayward on the day that Mosher is telling the undercover right the confluence of corroborating evidence is what was so powerful in this case moreover you have his very incriminating flight from law enforcement and your honor judge Horwitz had asked did he know when he fled that Phillips had been arrested the answer is yes partly for the reason mr. ballast admitted which is the texts are pretty clear that when Phillips is arrested Miller is texting with Phillips's I put a chart in our brief that has the express sort of language so he knows more importantly as reported in Miller's PSR at paragraph 19 when he's arrested after the high-speed chase he admits to law enforcement I knew Donnie got arrested earlier today so there's two grounds I know that's in the PSR was that introduced at trial I think it was but this was not a contested fact which the court can take because the district court had no occasion to overrule that well no that's that's that's not right I mean we can use that uncontested fact for purposes of sentencing but the question is whether with respect to whether the record is sufficient to convict someone we can only look at what was in the record at trial correct that sounds correct your honor and if I misstate that that was in the introduced a trial then I will supplement in a 28 J letter but there was also testimony from miss gong or miss gay depending on how you do last name is GAA at trial that's Miller's girlfriend and she testified and I think these facts were very incriminating from the perspective of the jury that on the day of Phillips's arrest that he was on his phone a lot that that he had her do what the law enforcement referred to as a heat run that is there in her house in this kind of remote place over by San Jose and he has her get in the car while he stays at the house and drive around the block to see if she stopped or arrested and when she isn't he then determines okay it's clear and her testimony if you believe it was she didn't even know that Miller had hidden the $29,000 in cash under the tire she was as surprised as law enforcement and finding it she also said that wasn't my money plus you have evidence that mill Miller is aware of who Phyllis is and the only evidence that would connect those two in this case some of this evidence is that she was a downstream distributor from from Phillips and Miller and his concern and his reason to get ahold of Phyllis is to find out am I in trouble too did they get Donnie and are they coming for me and all of his behavior is consistent with that and unless the court has specific questions I think I have the two main parts I'm prepared to submit unless you have specific areas you'd like me to emphasize let me ask my colleagues whether they have other questions do not have a question about the baseball cap yes your honor what was the relevance of baseball the relevance your honor was in the government had well me I was trial counsel I thought there might be an issue of Miller contesting the connection to the property at Mount Diablo in Contra Costa County because he's arrested fairly deep an hour or two away from that in a girlfriend's car and we had evidence that had he contested that the evidence found at the at Miller's residence was not his residence we had evidence of him from his phone and a similar hat found at his house that would link him inextricably to that house and I think specifically we had a cell phone photo of Miller wearing the hat he was arrested with in at other times including at the house and so ultimately Miller's lawyers really couldn't contest it because the evidence was pretty tight that that was Miller's residence there was some other indicia but the that was the sort of affirmative reason in my own mind why we would put it in was in the event he tried to distance himself from the incriminating cash found at his house we would have another way of demonstrating you know that's Miller's house and here's how and that that hat was going to help link it up were there two hats or one hat there was one hat introduced there were two hats total seized so and they were very similar in style they were kind of flat rim baseball hats the one introduced that Miller challenges was gray in color if I recall and it had the letters Oakland across it the hat at his house I think was red with some other logo in but it was that same flat rim kind of baseball cap I think I wanted it said nomads but that was not I don't get how the hat in the car would Miller to the house because we had photos of him in the hat either at the house or at other occasions and the hats were very similar style it ultimately we didn't have a photo with the photo of him in the hat that was found in the car and the hat that was found in the house it was on his cell phone that was seized from his person no what was the photo what happens with that it was Miller wearing the hat but I can't recall exactly the context of where he was but that was why we were which was in the photo the one that was in the car with one that was introduced we had photos of him wearing that that was introduced I think it was at the house but that was our thinking ultimately the evidence came in and it wasn't argued or emphasized it was really mr. Phillips's lawyer that introduced a sort of whole other narrative about the hat that frankly didn't even occur to us and we certainly stayed away from any concern once the court made it clear that was off-limits it wasn't anything we cared to do anyhow other questions for the government I did have one question and it was about the sentence in miss in and I believe it's in mr. Phillips's case okay he's going to counsel didn't spend time on it there seems to be a misstatement by the government that there he never made an attempt to plead and the PSR shows that he made unsuccessful attempts to plead and I'm not suggesting that you should have accepted those attempts is that misstatement and it didn't bear on whether or not the judge's denial of the was correct well I don't want to quibble with your honor but it isn't a misstatement from the government's perspective because the the attempt to plead guilty to 15 years it was an impossibility at the time mr. Phillips wanted to do that because the prior conviction had been filed by information so he could only plead open to 20 years there was no offer that I could give that would allow him 15 years and I wasn't going through given that we were literally the first day of trial and so from my perspective it's not a misstatement but even if it was he didn't you know he if he pled open it was 20 years he wanted 15 but that was that was sort of an offer that he had made up that didn't exist at the time I hope that answers your question was was that disclosed in the PSR well I think the probation officer was aware of it because the interaction with no I know he was aware of it my question was was that I would did the PSR disclose that history I'm not sure without looking at it okay yeah I know it because it existed but other questions judge press did you have I did not thank you okay well thank you thank the government and we'll hear from let's start out with mr. Miller thank you your honors mr. Miller lawyer thank you thank you your honor I have three points I'd like to make first with respect to the judge Horwich's question about whether mr. Miller knew that mr. Phillips had been arrested earlier in the day I don't believe there's any evidence in the record on that the government's made that assertion on page 26 of its brief but as counsel noted that's only listed in the PSR it was not part of the evidence but there is evidence there is am I right that there is evidence that he tried on multiple occasions to get a hold of mr. Phillips and was unsuccessful is that right on April 7th there's text between him and mr. Phillips girlfriend and he said I can't get a hold of mr. Phillips do you know where he is can you have him call me and then he talks about asked about do you have Phyllis's phone number it's clear that he knows that mr. Phillips knows Phillips and he's asking her because he's concerned about his friend about how to get in touch with him yeah now that now you're making characterizations I'm just it just and then what is that what does the girlfriend say in response to when when he's asking to play mostly that he's at work and I'll have to get back to you later well but eventually doesn't she say something like I can't find him I'm concerned or something like that yeah I think there is something about he says she doesn't she doesn't get off until 11 mr. Miller says please call me it's important he says as soon as I punch out I'm about to be off of work those are at the text that SCR in the government's brief at 10 and 11 and what what is in the record was that agent Nearing said that when mr. Miller was arrested he saw officers outside and he asked his girlfriend to drive around to see if she got stopped the second point I wanted to prosecutor misspoke that the counts involving September 11 mr. Miller was waited on for the count six and seven there were no observations of mr. Miller with mr. Phillips on that date and it's also significant that in that Phillips Mosher references in her reported in a recorded conversation that it was her sources girlfriend's birthday that day September 11 and mr. Phillips girlfriend it was September 11 so when he's talking with or we're talking with mr. Phillips on September 11th it would be reasonable to assume that those conversations may have been involved involving his girlfriend's birthday and finally with respect to the baseball cap I think judge for which is is correct that I misspoke when I talk about it at a close pace I mean that there's no with respect to the mission of the baseball cap and the evidence of the international travel to Mexico any error here should require a reversal because the evidence was was at a minimum just over sufficient to get the jury to convict and it may have been because of that baseball hat that references a dangerous motorcycle gang that the jury may have been influenced by other factors to convict the prosecutor's response was largely about things that weren't in evidence reasons they thought about introducing the cap but they they didn't need to only the one cap was introduced there was no relevance at all there was no dispute that mr. Miller was arrested in the vehicle that he was there and under these circumstances even if the court would uphold the evidence is sufficient which I don't believe it is or it should reverse because of the erroneous admission of the baseball cap and the other evidence thank you thank you thank you counsel please thank you I would just like to know that the government misreads Louise in the sense that in Louise private the government informant in that case is the equivalent of the D agent here Merlino and Louise is the equivalent of Mosher Maurice Merlino is the unwitting government or unwitting agents in Louise and the key issue in Louise is whether the threat by Merlino you know was an improper inducement so it's just that's how those cases line up I just want to make that clear that Merlino is the unwitting agent in in Louise the other thing I would like to point out is the government says well the evidence would not have justified the entrapment instruction that's because there was no evidence presented at trial they just didn't allow it I was gonna ask you about that did you have did you have any obligation to make a proffer at the time of the pretrial ruling well there was a proffer made with regard to with regard to lack of predisposition and right now I I understand but that's a separate issue from what you think the government did wrong did you make any proffer pretrial about what evidence you the proffer related to Mosher using an improper inducement related to the the son's defense that was also made by the defense before trial but the connecting the dots with with the D agents and Mosher would have really been a matter of testimony I mean they couldn't get at that evidence without having Mosher understand without having the agent understand a question about it and that was just completely precluded by the district courts pretrial rule well that's what I was asking we really precluded from asking those questions at trial or is it where you just told that you couldn't present an entrapment defense I'm not sure those questions would have been irrelevant to trial well I think you know the whole defense was shut down so at that point you know I think the record shows that defense counsel once the defense was shut down basically most of the trial didn't cross-examine the vast majority of the government's cross-examination because there was no purpose any longer the defense had been shut down and I think that you know if you look at the 7th Circus decision in Mayfield that's why I think district we should be really cautious about the person defendants deserve the day in court they the government gets to put on its evidence and it did here for you know a very long time the defense should get to put on its evidence and if it doesn't justify the instruction it doesn't justify the instruction but at least give them that opportunity that's what the due process clause requires and it didn't get that here as to the sentencing issue I would just like to mention that the government could have dismissed the prior I believe to get the deal of 15 years but more to the point it showed mr. Phillips's willingness to plead and this case is similar to McKinney where the court said that it was erroneous not to give the acceptance of responsibility reduction in that case here basically didn't put on defense a trial offer to plead guilty before trial was very accepted responsibility during the sentencing hearing this is a case that justifies the acceptance of responsibility you can't just deny it because he went to trial that's that's improper under this course precedent thank you counsel thank you thank all counsel for their arguments and briefing in this submitted and that concludes our business for today we'll be in recess until tomorrow
judges: Hurwitz, Feinerman, Bress